COCO BROTHERS, INC., Appellant,

v.

Samuel PIERCE, Secretary of U.S. Department of Housing and Urban Development, and the Allegheny County Housing Authority, Appellees.

No. 83–5797.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule 12(6)
June 8, 1984.

Decided Aug. 27, 1984.

Maurice A. Nernberg, Jr., James R. Cooney, Nernberg & Laffey, Pittsburgh, Pa., for appellant.

Melvin L. Vatz, Pittsburgh, Pa., for appellee, Allegheny County Housing Authority.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellee, Samuel Pierce.

Before WEIS and BECKER, Circuit Judges, and ACKERMAN, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this government contract case, the district court denied a preliminary injunction requested by a disappointed bidder. The suit was brought after another builder was selected but before a contract was executed. Whether the dispute is viewed

---

* The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

as a pre or post-award case, we hold that the United States Claims Court is not the exclusive forum and the district court had jurisdiction. Concluding that on the merits the plaintiff failed to show illegality or irrationality in the defendants' decision, we will affirm the district court's order.

Plaintiff contractor sought declaratory relief and an order enjoining defendants from awarding a housing construction contract to another builder. The district court concluded that plaintiff failed to show irreparable harm and denied the preliminary injunction.

The Allegheny County Housing Authority, in conjunction with the Department of Housing and Urban Development, proposed the construction of an apartment building for the elderly in Penn Hills, Pennsylvania. The project is authorized by the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* (1982).

A number of developers, including plaintiff, submitted bids in response to the County Housing Authority's July 2, 1982 request for proposals. The Authority initially accepted the plaintiff's proposal but, on review, HUD rejected the bid as nonresponsive. On February 14, 1983, the Authority approved the proposal submitted by another bidder, Crossgates, Inc., and HUD concurred with that selection on March 4, 1983.

On March 3, 1983, plaintiff was notified that HUD had found its bid nonresponsive because of "insufficient storage space." The plaintiff's request for withdrawal of HUD's objection was denied by the agency on April 11, 1983.

Plaintiff filed its complaint in the district court on June 9, 1983. A contract between Crossgates and the Authority was not executed until December 21, 1983, although the contractor had done some preliminary work before that date.

At a hearing on the request for a preliminary injunction, defendants argued that, because suit was commenced before execution of a contract, exclusive jurisdiction was in the United States Claims Court.

Plaintiff wavered in its approach to whether the dispute was a pre or post-award case. In its complaint and opening remarks at the hearing, plaintiff argued this was a pre-award case, but that position began to shift as testimony was taken.

In reviewing the record, the court concluded that "the selection of another developer does constructively constitute an award of the contract even without a formally executed document." Because the plaintiff's action was filed after the selection of another bidder's proposal, the district judge characterized this as a post-award case and therefore held the court had jurisdiction. Hence, it was not necessary to reach the defendants' contention that the Claims Court has exclusive jurisdiction in pre-award cases.

On the merits, the court first reviewed the stringent standards applicable when a disappointed bidder attempts to set aside the award of a government contract. However, the district judge chose to deny the injunction on another ground. The plaintiff's alleged loss was compensable in damages and, therefore, the irreparable injury necessary for a preliminary injunction had not been demonstrated.

On appeal, plaintiff contends that it has suffered irreparable harm because it cannot recover its anticipated profits under the contract. Plaintiff also reasserts its position that HUD's actions were illegal and irrational. Defendants renew their challenge to the jurisdiction of the district court, contending that this is a pre-award case for which exclusive jurisdiction rests in the Claims Court. They argue alternatively that if this is post-award litigation, Crossgates should have been joined as an indispensable party.

We first address the jurisdictional issue. Defendants do not contest the proposition that the district courts have jurisdiction in post-award government contract cases. *See B.K. Instrument, Inc. v. United States,* 715 F.2d 713 (2d Cir.1983); *United States v. John C. Grimberg Co., Inc.,* 702 F.2d 1362 (Fed.Cir.1983). Defendants, however, dispute the district court's finding

that because Crossgates had been "select-ed," it had been "awarded" the contract. They note that, even after a particular bidder's proposal has been chosen, further negotiations between the government agency and the contractor are required and may result in a failure to reach an agreement. Defendants say the possibility that a contract will not be executed is realistic enough that the other bidders are asked if they wish further consideration should the selected proposal not result in a contract.

The parties have not cited any case law or legislative history on the meaning of "award" in this context, and our research has not been particularly enlightening. However, we do note that in *AABCO, Inc. v. United States*, 3 Cl.Ct. 109, 113 (1983), the Claims Court found that negotiations after initial acceptance of a bid postponed the date of the "final award."

The Code of Federal Regulations on public contracts states that "award shall be made by the contracting officer by written notice", 41 C.F.R. § 1–2.407–1(a) (1983), and that "award shall be made by mailing or otherwise furnishing to the successful bidder a properly executed award document or notice of award." *Id.* § 1–2.407–1(c). In this case, the regulations may not be pertinent because the contract was to be executed by the local housing authority rather than the federal government.

In any event, the record does not contain a document stating that a contract had been "awarded" to Crossgates. In a letter dated March 4, 1983, HUD notified the Authority that it should advise "Crossgates of their selection in accordance with HUD handbook 7417.1, et cetera." However, whether such notice was ever sent, what it contained, and its effect if received are not revealed in the record. Absent these pertinent facts, we cannot determine whether this is a pre or post-award case. Despite this gap in the record, we conclude that the district court properly considered the merits because it had jurisdiction even if this is a pre-award case.[1]

■ We begin with the statute that has generated differing views on the jurisdiction of the United States Claims Court. The Federal Court Improvements Act of 1982 created the Article I Claims Court and essentially transferred to it the trial jurisdiction of the former Court of Claims. *See* 28 U.S.C. § 1491(a)(1) (1982); *see also* S.Rep. 275, 97th Cong., 1st Sess. 7–8, *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 17–18. Relief in the Court of Claims generally had been limited to an award of monetary damages, *see United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976), but the Act enlarged the new court's jurisdiction beyond that of its predecessor. "To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." 28 U.S.C. § 1491(a)(3) (1982).

Relying solely on the literal language of section 1491(a)(3), the District Court for the District of Columbia held that it had been ousted of jurisdiction and that only the Claims Court could grant a pre-award injunction. *Opal Manufacturing Co. v. UMC Industries, Inc.*, 553 F.Supp. 131 (D.D.C.1982). *See also B.K. Instruments*, 715 F.2d at 721 n. 4 (dictum). The word "exclusive" was interpreted as applying to any and all other courts. That construction, although plausible, is one that we believe to be erroneous.

1. This appeal is solely from the denial of injunctive relief. We need not determine, therefore, whether the case is within the Claims Court's exclusive jurisdiction over damage claims in excess of $10,000. *See* 28 U.S.C. § 1346(a)(2). Although the complaint includes a prayer for the plaintiff's costs and expenses in submitting a bid proposal, that relief is requested "[i]n the alternative," the amount sought is unspecified, and no claim for damages has been addressed by the district court. In the circumstances of this case, the district court properly exercised jurisdiction over the motion for a preliminary injunction, while postponing a jurisdictional ruling on the damages claim.

The legislative history explaining the grant of equitable power to the Claims Court was reviewed in *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1369–72 (Fed.Cir.1983). In an early version of the proposed legislation, the Claims Court was to be given equitable power in all cases brought before it. *See* S.21, 97th Cong., 1st Sess. § 132(a)(2) (1981); H.R. 2405, 97th Cong., 1st Sess. § 126(d) (1981). However, because of strenuous objections by the Justice Department, that provision was changed to limit the grant to pre-award contract cases. The Federal Circuit Court, although not presented with the issue of pre-award jurisdiction, commented that it could find no indication that Congress intended to take away the district court's power to act in those cases. 702 F.2d at 1374.

The legislative history strongly supports the Federal Circuit Court's conclusion. The Report of the House Judiciary Committee observes that the Claims Court was to be given equitable power, but continues: "This enlarged authority is exclusive of the Board of Contract Appeals and not to the exclusion of the district court." H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981).

The Committee's statement is straightforward enough. It should also be observed that under the Contract Disputes Act of 1978, Pub.L. 95–563, 92 Stat. 2383 (codified as amended at 41 U.S.C. §§ 601–613 (1982)), the Court of Claims and agency boards of contract appeals had concurrent jurisdiction to review appeals from decisions of contracting officers, 41 U.S.C. §§ 606, 609(a)(1) (Supp. V 1981). In addition, the agency boards had the authority "to grant any relief that would be available" in the Court of Claims. *Id.* § 607(d). Thus, the House Report endeavored to make it clear that the word "exclusive" in the statute meant the exclusion of the boards of contract appeals, which were not to exercise the equitable authority being granted to the Claims Court.

Exclusion of the district courts, however, was not contemplated. To make that point unmistakeable, the Report goes on to say, "It is not the intent of the Committee to change existing caselaw as to the ability of parties to proceed in the district court pursuant to the provisions of the Administrative Procedure Act in instances of illegal agency action." H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (citing as an example, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970)." [2]

It has been suggested that this passage refers only to the district courts' equitable authority in post-award cases, an area in which *Scanwell* is representative. That interpretation, however, is belied by the following statement in the Committee Report: "Nor is it the intent of the Committee to oblige lawyers, litigants, and possibly witnesses to travel to Washington, D.C., whenever equitable relief is sought in a contact [sic] action *prior to award*. Although Claims Court judges will travel, they cannot be expected to do so at extremely short notice. Therefore, for the time being, the Committee is satisifed [sic] by clothing the Claims Court with enlarged equitable powers not to the exclusion of the district courts. The dual questions of whether these powers should even be broader and of whether they should be exclusive of the district courts will have to wait for a later date." *Id.* (emphasis added).

The House Report leaves no doubt that the jurisdiction of the district courts was not to be disturbed. The Senate Report, although not as specific, is consistent. It states that "the *Scanwell* doctrine as enunciated by the D.C. Circuit Court is left in tact [sic]". S.Rep. No. 275, 97th Cong., 1st Sess. 23, *reprinted in,* 1982 U.S.Code Cong. & Ad.News 11, 33.

That report also points out that "[s]ince the [Claims Court] is granted jurisdiction in this area, boards of contract appeals would

---

**2.** In *Scanwell,* the Court of Appeals for the District of Columbia Circuit held that disappointed bidders on government contracts had standing to assert a challenge in the district courts under the Administrative Procedures Act. *See also, Merriam v. Kunzig,* 476 F₁2d 1233 (3d Cir.), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973).

not possess comparable authority pursuant to the last sentence of section 8(d) of the Contract Disputes Act." *Id.; see also* 127 Cong.Rec. S14693–94 (Dec. 8, 1981).[3] We read the Senate Report to evince the same intention disclosed in the House Report—to grant the Claims Court equitable jurisdiction exclusive of the agency boards but not the district courts.

Moreover, we would not expect Congress to remove jurisdiction from the district courts by implication rather than by specific pronouncement. Thus, when the Contract Disputes Act was enacted, Congress specifically eliminated the district courts' authority to consider appeals from contracting officers' decisions and unequivocally left that jurisdiction in the agency boards and the Court of Claims. *See* 28 U.S.C. § 1346(a)(2) (1982) ("the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ... in cases ... which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.").

Although on first reading, the meaning of the word "exclusive" in section 1491(a)(3) seems apparent, further reflection reveals an appropriate query to be: "Exclusive of what?" As has been demonstrated, resort to the legislative history is necessary to resolve this question. "While it is true that when clear and unequivocal, the language of a statute is the best and most reliable index of its meaning, it is also true that the surest way to misinterpret a statute or a rule is to follow its literal language without reference to its purpose." *Viacom International, Inc. v. Federal Communications Commission,* 672 F.2d 1034, 1040 (2d Cir.1982) (citations omitted); *see also Bob Jones University v. United States,* 461 U.S. 574, ——, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). In this case, a superficial reading of the language in section 1491(a)(3) leads one to a result never intended by Congress.

Our reading of the statute, in light of its legislative history, convinces us that the district court retains jurisdiction to consider pre and post-award government contract disputes. Accordingly, we turn to the merits.[4]

■ Although the district court has jurisdiction over cases of this nature, its discretion to afford injunctive relief is restricted to circumstances where the governmental agency's action is illegal or irrational. As this Court stated in *Sea-Land Services, Inc. v. Brown,* 600 F.2d 429, 434 (3d Cir. 1979), government contract decisions should not be overturned unless "there is no rational basis for the agency's decision," and "a showing of clear illegality is an appropriate standard to impose on an aggrieved bidder who seeks judicial relief."

---

**3.** In *Coastal Corp. v. United States,* 713 F.2d 728 (Fed.Cir.1983), the court found another area in which the jurisdiction of the boards of contract appeals was more restrictive than that of the Claims Court. In that instance, an "implied contract to treat bids honestly and fairly" was held not the type of agreement covered by the Contract Disputes Act. *Coastal Corp.'s* reading of the Disputes Act makes it unlikely that a pre-award dispute could be presented to an agency board. From that standpoint, at least in retrospect, it was unnecessary for Congress to state that the equitable authority being granted the Claims Court in those cases was exclusive of the agency boards. However, as the Senate Report makes clear, Congress was legitimately concerned that the statute not be read to give the boards equitable power through the last sentence of 41 U.S.C. § 607(d), which allows them "to grant any relief that would be available" in the Claims Court.

**4.** Our conclusion that the district court has jurisdiction in this pre-award case eliminates any need to decide whether transfer to the Claims Court would have been appropriate. We are also thus denied, or perhaps spared, the opportunity to consider the intriguing question of whether Congress may, consistent with the Constitution and separation of powers principles, place exclusive equitable jurisdiction in an Article I court to enjoin and compel activities of the executive branch. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 69 n. 23, 102 S.Ct. 2858, 2870 n. 23, 73 L.Ed.2d 598 (1982) ("Congress cannot 'withdraw from [Art. III] judicial cognizance *any* matter which, *from its nature,* is the subject of a suit at common law, or in equity or admiralty.'").

Courts have consistently recognized the need to exercise restraint in interfering with procurement decisions and to honor a large measure of discretion in contracting officers. *Id.*

Even if the agency's decision lacks a reasonable basis, it does not automatically follow that the plaintiff is entitled to injunctive relief. *See Princeton Combustion Research Laboratories, Inc. v. McCarthy,* 674 F.2d 1016, 1021–22 (3d Cir. 1982). *See also Allis-Chalmers Corp. v. Friedkin,* 635 F.2d 248 (3d Cir.1980). When determining the appropriateness of relief, three interests are to be weighed: "[T]he practical considerations of efficient procurement of supplies for continuing government operation; the public interest in avoiding excessive costs; and the bidders' entitlement to fair treatment through agency adherence to statutes and regulations." *Sea-Land,* 600 F.2d at 434.

■ The evidence in this case established that HUD found the plaintiff's proposal unsatisfactory because the apartment units did not have the requisite general storage space in a design suitable for elderly and disabled persons. In certain units, HUD excluded any closet space of a depth over four feet—a standard employed to ensure convenient use by tenants, especially the elderly. As to apartments for the handicapped, HUD found some storage space inadequate because it was too high to be accessible to those in wheelchairs. At the district court hearing, the plaintiff's attempt to show that its proposal was satisfactory did not adequately respond to HUD's concerns. In light of these circumstances, HUD's rejection of the bid cannot be said to be either illegal or irrational. Accordingly, denial of the injunction is sustainable on that ground.

Lack of irreparable harm is one factor militating against the grant of a preliminary injunction and properly supports the district court order here. But the special nature of suits by aggrieved bidders on government contracts, as well as the limited review available in the district court, counsels that the rationality factor be considered first and appropriate findings made on that issue. *See Princeton Combustion,* 674 F.2d at 1022 ("once the district court ... determines that an agency's procurement decision is rational, its inquiry is at an end").

Because there was no showing of illegality or irrationality, the injunction was properly denied. Accordingly, the district court's order will be affirmed.