**SOLANO GARBAGE CO. and the City of Fairfield, Plaintiffs,**

v.

**Richard B. CHENEY, as Secretary of the Defense, Donald Rice, as Secretary of the Department of the Air Force, Colonel Bobby C. Lloyd, as Commanding Officer of the 60th Military Airlift Wing, Travis Air Force Base, and the United States of America, Defendants.**

No. CIV. S–88–1296/WBS–JFM.

United States District Court, E.D. California.

Nov. 14, 1991.

Oliver L. Holmes, Philip A. O'Connell, Jr., Pamela J. Tennison, Sonnenschein, Nath & Rosenthal, San Francisco, Cal., Betsy Straus, City Atty., City of Fairfield, Fairfield, Cal., for plaintiffs.

Michael A. Hirst, Asst. U.S. Atty., George L. O'Connell, U.S. Atty., U.S. Attys. Office, Sacramento, Cal., for defendants.

## MEMORANDUM AND ORDER

SHUBB, District Judge.

This matter is now before the court on the objections of both parties to the Magistrate Judge's Proposed Findings of Fact and Recommendations of Law filed July 13, 1991.

### I. *Factual & Procedural Overview*

The material facts and procedural history of this case are set forth in detail in Magistrate Judge Moulds' order of July 31, 1991. Briefly, plaintiff Solano Garbage Co. ("Solano") has an exclusive franchise with the City of Fairfield to provide garbage collection services in the city. Although Travis Air Force Base ("Travis") is located within the City of Fairfield, it refuses to award a contract for the collection of refuse to Solano based on the exclusive franchise agreement.

Solano filed this action on October 11, 1988, challenging the government's refusal to award the refuse collection contracts to plaintiff or the City of Fairfield as violative of provisions of the Resource Conservation and Recovery Act ("RCRA"). 42 U.S.C. § 6961. By order filed February 14, 1989, Judge Ramirez granted partial summary judgment for defendants and denied plaintiff's motion for a preliminary injunction. The court found that 40 C.F.R. § 255.33 "represents an appropriate exercise by EPA of its statutory mandate to promulgate guidelines" and that those guidelines were part of the mandated California state plan. The court held, however, that factual issues remained as to whether Travis was a "major federal facility" within the meaning of the regulation.

On August 3, 1989, Solano moved for reconsideration. Subsequently, the parties cross-moved for summary judgment. After hearing, the motions were submitted and referred to Magistrate Judge Moulds on January 11, 1991 for findings and recommendations pursuant to Local Rule 302(b)(13) and 28 U.S.C. § 636(b)(1). On June 25, 1990, Magistrate Judge Moulds ordered additional briefing on the issue whether the district court lacked jurisdiction and therefore, whether the action ought to be transferred to the Claims Court pursuant to 28 U.S.C. § 1631. Magistrate Judge Moulds filed Proposed Findings and Recommendations on July 31, 1991, recommending that the court find that it had jurisdiction and that plaintiffs' motions for summary judgment and reconsideration be granted. Both parties have filed objections.

### II. *Standard of Review*

■ The court reviews de novo those portions of the proposed findings of fact to which objection has been made. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). In making a de novo determination, the court considers the record which has been developed before the magistrate. The court is not bound to adopt the Magistrate Judge's findings but rather the judge will, "in sound judicial discretion," make his own determination on the record. *United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980).

■ As to any portion of the proposed findings of fact to which no objection has been made, the court assumes its correctness and decides the motions on the applicable law. *See Orand v. United States*, 602 F.2d 207, 208 (9th Cir.1979). The Magistrate Judge's conclusions of law are reviewed de novo. *See Britt v. Simi Valley Unified School District*, 708 F.2d 452, 454 (9th Cir.1983).

### III. *Application of C.F.R. § 255.33*

■ In their objections, defendants acknowledge that provisions of the RCRA, specifically 42 U.S.C. § 6961, potentially subject Travis to the City of Fairfield's local regulations granting an exclusive garbage franchise to Solano. *See Parola v.*

*Weinberger,* 848 F.2d 956, 962 (9th Cir. 1988) ("[L]ocal regulations requiring use of an exclusive garbage franchise are RCRA 'requirements' where such regulations are part of the state waste management plan."). Nevertheless, defendants urge the court to find that 40 C.F.R. § 255.33 confers municipality status on major federal facilities, thus immunizing Travis, arguably a major federal facility, from the effects of local exclusive garbage franchise agreements. Magistrate Judge Moulds found that the EPA administrator lacked authority to promulgate regulations effectively exempting Travis from local municipal regulations to which it would otherwise be subject under the RCRA.

Defendants object to that finding on numerous grounds. First, they argue that it conflicts with two unpublished district court decisions applying § 255.33 to exempt major federal facilities on similar facts. *See Waste Management of North America v. Weinberger,* No. CV 87–4329–DT (C.D.Cal.1987); *affirmed on other grounds,* 862 F.2d 1393 (9th Cir.1988); *Carmel Marina Corp. v. Carlucci,* NO. C–87–20789–WAI (N.D.Cal.1987) (Defendants' exhibits B & C in opposition to motion for preliminary injunction). Although the Magistrate Judge recommends a decision in conflict with those cases, he does so based on an analysis of statutory construction and legislative history which neither unpublished opinion addresses. Moreover, both the *Waste Management* and *Carmel Marina* decisions predate the *Parola* decision. *Parola* establishes ground rules for analyzing an exclusive franchise case under the RCRA which did not exist at the time either of the aforementioned cases were decided.

Defendants also contend that the Magistrate Judge mischaracterizes their theory of the case by suggesting that the defendants seek to treat Travis as utterly exempt from 42 U.S.C. § 6961, whereas de-

fendants merely assert that § 255.33 entitles Travis to be treated as a municipality responsible for its own solid waste disposal. Defendants go on to argue that such a mischaracterization is crucial because if their interpretation of the regulation does not exempt "major federal facilities" from local regulation then it is not in conflict with § 6961's admonition that only the President is entitled to create such an exemption. *See* 42 U.S.C. § 6961.

That argument misstates the Magistrate Judge's findings. The Magistrate Judge concluded that:

> Interpreting the regulation as the government suggests in this case would have the *practical effect of exempting* Travis from Fairfield's regulations respecting solid waste collection, even though Travis is entirely within Fairfield's boundaries. (emphasis added).

That conclusion does not mischaracterize the defendants' interpretation. If defendants' interpretation prevailed, Travis could be treated as a municipality which would not be subject to another municipality's regulations. This is another way of stating that the practical effect of defendants' interpretation is to exempt Travis from the City of Fairfield's regulations. Defendants' interpretation of the regulation is a euphemism for exemption, and as such, conflicts with the provisions of the RCRA.

Defendants also urge that their interpretation of § 255.33 is more consistent with the RCRA's goal of promoting regional planning efforts than an interpretation of § 6961 which recognizes exclusive local garbage collection agreements. This argument in effect asks the court to prefer defendants' most recent interpretation of the regulation over recent Ninth Circuit precedent subjecting federal installations to exclusive garbage collection franchises under the RCRA.[1] The court declines to do so.

1. Defendants neglect to point out that the Magistrate Judge observed that "the government took an entirely different, and opposing position with respect to the interpretation of the regulation in the *Parola* litigation." In that case, the Department of Justice argued to the Ninth Circuit:

Ignored by the GAO [in its Solano ruling] is that the 'major federal facilities' language, included under the subchapter on solid waste, is part of the section entitled 'Identification of Regions and Agencies for Solid Waste Management.' See Section 4006(a), 42 U.S.C.

Defendants next contend that contrary to the Magistrate Judge's findings, the RCRA provides the EPA with authority to provide guidelines in identifying "areas ... which are appropriate units for planning regional solid waste management services." *See* 42 U.S.C. § 6942(a); 40 C.F.R. § 255.1. This argument does not suggest any error or misunderstanding by the Magistrate Judge. Section 6942 authorizes defendants to promulgate guidelines "[f]or purposes of encouraging and facilitating the development of regional planning for solid waste management." It does not empower the EPA to circumvent § 6961 by creating an exemption to local regulations under the pretense of "identifying areas" for regional planning.

## IV. *Subject Matter Jurisdiction*

Defendants press two challenges to the court's exercise of jurisdiction. First, they challenge the court's jurisdiction over pre-award government contract claims, arguing that the Claims Court has exclusive jurisdiction over such actions. *See J.P. Francis & Associates v. United States of America*, 902 F.2d 740, 742 (9th Cir.1990).[2] Defendants contend the contract at issue in this case was not awarded until after plaintiff filed this action and Judge Ramirez granted partial summary judgment for defendants. The Magistrate Judge rejected this argument, recommending:

It appears that the contract at issue in this case was awarded on April 1, 1989.... Accordingly, assuming arguendo that the claims in this case are contract claims, they are now post-award contract claims and § 1491(a)(3) does not divest the district court of jurisdiction.

The court interprets *J.P. Francis* as standing for the unremarkable proposition that only the Claims Court has jurisdiction

§ 6946(a). The inclusion of the 'major federal facilities' language in this section simply permits those agencies to join in regional solid waste management plans. It does not, contrary to the GAO's view, imply that 'major' federal facilities are exempt from the requirements of section 42 U.S.C. § 6961 while 'minor' federal facilities are not. That, however, is the logical conclusion of the *Solano* decision.

to grant equitable or declaratory relief on a pre-contract claim case. *J.P. Francis*, 902 F.2d at 742. ("[T]he issue before the court is whether [1491(a)(3)] divests the district courts of jurisdiction to issue pre-award injunctions."). However, nothing in *J.P. Francis* prevents a district court from exercising jurisdiction and granting equitable relief where the contract claim, though once arguably pre-contract, has ripened into a post-contract claim. *See Cubic Corp. v. Cheney*, 914 F.2d 1501, 1503 (D.C.Cir.1990) ("Section 1491(a)(3) provides for 'exclusive jurisdiction' in the Claims Court only 'before the contract is awarded.' "); *see also United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1366 n. 6 (Fed.Cir.1983) ("[I]t is more accurate to speak of (a)(3) as granting equitable power than as granting equitable jurisdiction.").

Although the court agrees this case is distinguishable from *Cubic Corp.* insofar as plaintiffs have not filed a post-award amended complaint, such a requirement should not be dispositive of the issues concerning the court's jurisdiction. The court could bring this case into factual conformity with *Cubic Corp.* by permitting plaintiff Solano to amend or supplement its complaint, or file a new complaint altogether, properly alleging the award of the contract, but such would serve only to further delay these proceedings unnecessarily. Whether the court has jurisdiction to grant equitable relief without running afoul of § 1491(a)(3) depends not on the technical state of the pleadings at the time equitable relief is sought or imposed, but rather on the state of the record, i.e., whether the contract at issue has in fact already been awarded. Since, as the record exists, this is now a post-contract award case, the court has jurisdiction over Solano's chal-

*See* exhibit A to Memo. in Support of Solano's Motion for Summary Judgment, filed August 14, 1989, at p. 27.).

2. As noted in the government's papers, this position flatly contradicts the position it took in its supplemental brief submitted to Magistrate Judge Moulds in opposition to jurisdiction. The court nevertheless considers the argument insofar as it goes to the issue of jurisdiction.

lenge to defendants' procurement procedure. *See Parola*, 848 F.2d 956; 42 U.S.C. § 6961 ("Neither the United States, nor any agent, employee or officer thereof shall be *immune* or exempt from any process or sanction of *any* State or Federal Court with respect to the enforcement of any such injunctive relief.").

■ Defendants also argue the court lacks jurisdiction to require the United States to perform a specific contract with Solano. Magistrate Judge Moulds recommended that the court enter an order:

(a) declaring the October 1988 solicitation illegal under RCRA; (b) permanently enjoining the defendants, their successors and all of their employees, officers attorney and agents from further performance under the contract awarded pursuant to the November 1988 solicitation; and (c) permanently enjoining the defendants from failing to comply with 42 U.S.C. § 6961 and with the local requirements for refuse collection promulgated by the city of Fairfield.

This recommendation is no more an order of specific performance than the Ninth Circuit's holding in *Parola* "that the RCRA ... requires federal installations to comply with local arrangements for solid waste collection and disposal, including exclusive garbage collection franchises." *See Parola*, 848 F.2d at 962.

Solano requests the court to modify the Magistrate Judge's recommendation and enter an order enjoining "the defendants from awarding the garbage collection contract to any party other than the exclusive franchisee approved by the City of Fairfield." Although this phrasing comes closer to an order of specific performance, it is consistent with *Parola* and more effectively precludes a circumvention of the requirements of the RCRA. *See Price v. United States General Services*, 894 F.2d 323, 325 n. 5 (9th Cir.1990). The court accordingly grants Solano's request.

## V. *Law of the Case and Reconsideration*

■ Defendants contend that law of the case principles prevent the court from reconsidering Judge Ramirez's determination that 40 C.F.R. § 255.33 applies to this case. Orders of this court are not to be lightly changed by any judge of the same court. *See Tanner Motor Livery, Ltd v. Avis, Inc.*, 316 F.2d 804 (9th Cir.), *cert. denied*, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963). Nevertheless, the law of the case doctrine does not prevent the court from revising a ruling before final judgment. *See* Fed.R.Civ.P. 54(b); *United States v. Houser*, 804 F.2d 565 (9th Cir. 1986). In view of the circumstances, reconsideration is appropriate in this case.

Accordingly, IT IS ORDERED that:

1. The Findings and Recommendations of the Magistrate Judge are adopted in full;

2. The plaintiff Solano's motions for reconsideration and for summary judgment are granted.

3. The defendants' motion for summary judgment is denied.

4. The court declares the October 1988 solicitation illegal under the RCRA.

5. The defendants, their successors and all of their employees, officers, attorneys and agents are permanently enjoined from further performance under the contract awarded pursuant to the November 1988 solicitation. The defendants are further permanently enjoined from failing to comply with 42 U.S.C. § 6961 and with the local requirements for refuse collection promulgated by the City of Fairfield. The defendants are further permanently enjoined from awarding the garbage collection contract to any person other than the exclusive franchisee approved by the City of Fairfield.

## FINDINGS AND RECOMMENDATIONS

JOHN F. MOULDS, United States Magistrate Judge.

This matter is before the court on plaintiffs' motion for reconsideration and on cross-motions for summary judgment.[1]

---

1. The motions were referred to the undersigned for findings and recommendations by order of the district court pursuant to 28 U.S.C. § 636(b).

Plaintiffs seek reconsideration of the district court's order of February 14, 1989, granting in part and denying in part the government's motion for summary judgment.

## BACKGROUND

This action arises out of two bid solicitations issued by the United States Department of the Air Force, Base Contracting Division, at Travis Air Force Base in Fairfield, California for refuse removal from Travis. Plaintiff Solano Garbage Company has an exclusive franchise with the city of Fairfield to provide garbage collection services in the city. Travis Air Force Base is located within Fairfield. For several years, Travis has contracted with three independent contractors, not including Solano, to provide garbage collection services on the base.

Prior to 1987, plaintiff submitted an unsuccessful bid for one of the collection contracts at Travis. Plaintiff subsequently filed a bid protest with the General Accounting Office ("GAO"). On February 5, 1987, the GAO issued a decision denying the protest. As part of the grounds for denial, the GAO found that Travis was a "major federal facility" within the meaning of 40 C.F.R. § 255.33 and therefore entitled to treatment as a separate municipality for purposes of the Resource Conservation and Recovery Act, 42 U.S.C. § 6961.

In 1988, one of the contractors notified Travis that it would be unable to continue to perform its contractual obligations. On October 5, 1988, Travis issued a solicitation for bids for refuse removal. A contract was awarded pursuant to this solicitation on November 1, 1988. On November 21, 1988, Travis issued a second solicitation for bids for refuse removal services for an initial period of six months with four twelve-month optional extensions through September 30, 1993. That contract has also been awarded to a contractor other than plaintiff.

Plaintiff filed the instant action on October 11, 1988, together with a request for a temporary restraining order. In its original complaint, plaintiff sought declaratory relief in the form of a declaration that an award of the refuse collection contracts to any party other than plaintiff or the City of Fairfield[2] would violate 42 U.S.C. § 6961 ("RCRA"). Plaintiff also sought an injunction barring the defendants from violating RCRA and from awarding contracts illegally in violation of that statute.[3]

By written order filed November 29, 1988, the district court denied plaintiff's application for a temporary restraining order.[4] The court found that any possible irreparable financial injury was "self-inflicted" because plaintiff had failed to assert its legal claim in a timely fashion.

Subsequently, plaintiff filed a motion for a preliminary injunction and defendants filed a motion for summary judgment. By order filed February 14, 1989, the district court granted partial summary judgment for defendants and denied plaintiff's motion for a preliminary injunction. The district court held that 40 C.F.R. § 255.33 "represents an appropriate exercise by EPA of its statutory mandate to promulgate guidelines" and that those guidelines were part of the mandated California state plan discussed *infra*. The court held, however, that factual issues remained as to whether Travis was a "major federal facility" within the meaning of the regulation. The instant motions for reconsideration and for summary judgment followed.

## JURISDICTION

In the February 14, 1989 order the district court held that 28 U.S.C. § 1491 did

---

2. Fairfield was realigned as a party plaintiff by stipulation and order filed September 11, 1989. When used in the singular in this order, the term "plaintiff" refers to Solano Garbage Company.

3. In the supplemental complaint filed pursuant to the court's order of February 14, 1989 and now pending before the court, plaintiff seeks essentially the same declaratory and injunctive relief, except that plaintiff also seeks an injunction prohibiting the defendants from authorizing performance under any new contract and a court order terminating any contract awarded pursuant to the November, 1988 solicitation.

4. The application was orally denied at a hearing on October 13, 1988.

not vest exclusive jurisdiction over plaintiffs' claim for pre-award injunctive relief in the United States Claims Court. 28 U.S.C. § 1491(a)(3) provides: "To afford complete relief on any contract claim brought before the contract is awarded, the [Claims Court] shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." Thereafter, in *J.P. Francis & Associates v. United States of America*, 902 F.2d 740 (9th Cir.1990), the Ninth Circuit held that § 1491(a)(3) divests district courts of subject matter jurisdiction over pre-award government contract claims. 902 F.2d at 742. By order filed June 25, 1990, this court directed the parties to submit supplemental briefing on the jurisdictional question in light of *J.P. Francis*.

It appears that the contract at issue in this case was awarded on April 1, 1989. *See* Declaration of Gary R. Gaudreau, Exhibit D to Plaintiff's Statement of Undisputed Material Facts, filed August 14, 1989. Accordingly, assuming *arguendo* that the claims in this case are contract claims, they are now post-award claims and § 1491(a)(3) does not divest the district court of subject matter jurisdiction.

Defendants also argue that the government has not waived sovereign immunity over plaintiff's claims. The government contends that plaintiff's claims are, in effect, claims for specific performance, and then contends that the United States has not waived sovereign immunity over claims for specific performance. *Price v. U.S. General Services Administration*, 894 F.2d 323, 324 (9th Cir.1990).

█ Plaintiff seeks declaratory and injunctive relief barring Travis Air Force Base from performing under a contract entered into in violation of RCRA. In *Parola v. Weinberger*, 848 F.2d 956 (9th Cir. 1988), the Ninth Circuit affirmed a district court decision granting summary judgment to plaintiffs in that case and "enjoining the

defendants from awarding the garbage collection contract to any party other than Parola." *Id.* at 958. The court noted that " '[t]here is no question that a district court may "[e]njoin the performance of a [government] contract if the award was the result of procedures not comporting with the law." ' " *Id.* at 959 (citations omitted). *Parola* is controlling here. The district court has jurisdiction over this action insofar as plaintiff seeks to enjoin the government from performing under an illegal contract. *See also Waste Management of North America v. Weinberger*, 862 F.2d 1393, 1397 (9th Cir.1988).

The government also contends that it has not waived sovereign immunity for suits against "major federal facilities" and that if the court determines that Travis is a major federal facility, this case should be dismissed for lack of subject matter jurisdiction. The government contends that neither RCRA nor the APA waive sovereign immunity for this claim. The government's argument in this regard is inextricably intertwined with the merits of both the request for reconsideration and the cross-motions for summary judgment and need not be separately resolved.

REQUEST FOR RECONSIDERATION

Plaintiff seeks reconsideration of that portion of the district court's February 14, 1989 order which held that 40 C.F.R. § 255.33 "represents an appropriate exercise by EPA of its statutory mandate to promulgate guidelines, and that those guidelines are applicable to the California plan." Order of February 14, 1989, at 5. Plaintiff asks the court to reconsider the previous interpretation of 40 C.F.R. § 255.33 or, in the alternative, to find that the regulation as interpreted in the earlier order is in excess of the statutory authority of the EPA under RCRA.[5]

The present controversy arose out of the February 5, 1987 decision by the General Accounting Office ("GAO") interpreting this regulation to provide an exemption

---

**5.** The matter was referred to the undersigned following oral argument in the district court on the pending motions.

from local regulation for major federal facilities and finding that Travis Air Force Base was a major federal facility within the meaning of the regulation Defendants have continued to follow that interpretation in their decisions concerning procurement of refuse collection services. Resolution of the issue presented requires interpretation of both 42 U.S.C. § 6961 and 40 C.F.R. § 255.33.

 In construing a statute, the court looks first to the statutory language, then to the legislative history, and "as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency." *Brock v. Writers Guild of America, West, Inc.,* 762 F.2d 1349, 1353 (9th Cir. 1985).[6] If the statutory language is clear, the court looks to the legislative history "to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987).

42 U.S.C. § 6961 provides in relevant part:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirements for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements,

> including the payment of reasonable service charges.... The President may exempt any solid waste management facility of any department, agency, or instrumentality in the executive branch from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so. No such exemption shall be granted due to lack of appropriation unless the President shall have specifically requested such appropriation as part of the budgetary process and the Congress shall have failed to make available such requested appropriation. Any exemption shall be for a period not in excess of one year, but additional exemptions may be granted for periods not to exceed one year upon the President's making a new determination. The President shall report each January to the Congress all exemptions from the requirements of this section granted during the preceding calendar year, together with his reason for granting such exemption.

By its terms, the statute only authorizes the President to grant exemptions from compliance with federal, interstate, state, and local requirements under the terms and limitations described in the statute. No other exemptions are mentioned. The plain language of the statute supports plaintiff's position.

The maxim of expressio unius est exclusio alterius is an intrinsic aid to statutory construction closely related to the plain meaning rule in that it "emphasizes the language of the statute and inferences to be drawn from the way it is written." 2A Singer, *Sutherland Statutory Construction,* § 47.25 at 209 (1984). Under that maxim, "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions." 2A Singer, *Sutherland Statutory Construction,* § 47.23 at 194 (1984).

---

**6.** In the instant case, the administrative interpretation before the court is that of the GAO, not the EPA. The GAO's interpretation of the statute and regulation at issue in this litigation is not entitled to deference. *Parola v. Weinberger,* 848 F.2d 956, 959–960 (9th Cir.1988).

As with the plain meaning rule, this principle can be "overcome by a strong indication of a contrary legislative intent or policy." *Id.* In the instant case, there is no strong indication that Congress intended the EPA administrator to be able to create exemptions from compliance with local requirements by regulation. To the contrary, the legislative history shows that Congress was aware of a history of controversy over the extent of federal compliance with local requirements mandated by § 118 of the Clean Air Act, 42 U.S.C. § 7418, and § 313 of the Federal Water Pollution Control Act, 33 U.S.C. § 1323. *See Parola v. Weinberger*, 848 F.2d at 961 (discussing the legislative history of § 6961). As the *Parola* court found, the legislative reaction to this history of controversy "was to subject federal installations to state environmental control." *Id.* Against this history, the court must conclude that Congress did not intend any exemption to local requirements beyond those specifically described in the statute.

The government argues, however, that the regulation does not create an exemption, it merely defines what level of local requirement a major federal facility will be subject to. However, neither the plain language of the regulation nor the legislative history of RCRA support this argument.[7]

■ Regulations are interpreted in accordance with traditional principles of statutory construction. *Diaz v. I.N.S.*, 648 F.Supp. 638, 644 (E.D.Cal.1986).

In determining the meaning of the regulation, the court is to examine the language of the regulation, the legislative history, and the practical consequences of any suggested interpretation. [Citation omitted.] The words used in the regulation are to be given their plain and ordinary meaning, [citation omitted], and if possible all ambiguities are to be resolved in favor of an interpretation consistent with the statutory and regulatory scheme.
*Id.*

Section 255.33 of Title 40 C.F.R. is found in Part 255 of title 40 of the Code of Federal Regulations. It provides:

Major Federal facilities and native American Reservations should be treated for the purposes of these guidelines as though they are incorporated municipalities, and the facility director or administrator should be considered the same as a locally elected official.

Section 255.1(a) of Part 255 defines the scope and purpose of Part 255. It provides:

These guidelines are applicable to policies, procedures, and criteria for the identification of those areas which have common solid waste management problems and which are appropriate units for planning regional solid waste management services pursuant to section 4002(a) of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 (the Act). The guidelines also define and guide the identification of which functions will be carried out by which agencies pursuant to section 4006 of the Act.

40 C.F.R. § 255.1(a).

Section 4002(a) of the Act, codified at 42 U.S.C. § 6942(a), requires the Administrator of the EPA to publish by regulation "guidelines for the identification of those areas which have common solid waste management problems and are appropriate units for planning regional solid waste management services." 42 U.S.C. § 6942(a).

Section 4006, codified at 42 U.S.C. § 6946, requires the Governor of each state to promulgate regulations based on the guidelines promulgated by the EPA Administrator pursuant to section 4002(a) "iden-

7. It is also true that the government took an entirely different, and opposing, position with respect to the interpretation of the regulation in the *Parola* litigation. It is the EPA's interpretation of the regulation that is entitled to deference, and the EPA was not a party in the *Parola* litigation. If the government's litigation position did reflect an EPA interpretation of the regulation, that interpretation would be entitled to little deference given the substantial conflict in the positions over a relatively short period of time. *See Santa Fe Pacific R. Co. v. Secretary of Interior*, 830 F.2d 1168, 1180 n. 91 (D.C.Cir. 1987).

tifying the boundaries of each area within the State which ... is appropriate for carrying out regional solid waste management." 42 U.S.C. § 6946(a). The regulations are to be promulgated "after consultation with local elected officials." *Id.* Thereafter, the State "together with the appropriate elected officials of general purpose units of local government" is required to "(A) identify an agency to develop the State plan [8] and identify one or more agencies to implement such plan, and (B) identify which solid waste management activities will, under such State plan, be planned for and carried out by the State and which management activities will, under such state plan, be planned for and carried out by a regional or local authority or a combination of regional or local and State authorities." 42 U.S.C. § 6946(b).

By its plain language, 40 C.F.R. § 255.33 requires "major federal facilities" to be treated as local municipalities *for purposes of the guidelines*, i.e., for purposes of the regulations in Part 255, which were intended to guide the states in developing state plans pursuant to § 4006. The regulation does not require the states to treat major federal facilities as separate municipalities for all purposes.

The Ninth Circuit has found "in the legislative history of RCRA a pervasive congressional concern that state and local authorities attempt to establish comprehensive systems for solid waste disposal and collection." *Parola*, at 961. The *Parola* court quoted from the legislative history:

> [M]ultiple jurisdictions within metropolitan areas often are unable to coordinate or unify their various solid waste collection or disposal systems because of obstacles which include: legal barriers, inconsistent disposal systems, inability to agree as to a single comprehensive system ... and inability to provide a long-term commitment of minimum volume of municipal refuse.

1976 U.S.Code Cong. & Admin.News at pp. 6238, 6315, quoted in *Parola*, at 961–62.

California's state plan was approved by EPA in 1981. *Parola*, at 962. The original enabling legislation was repealed in 1989, when California passed new legislation respecting solid waste management. Stats. 1989 ch. 1095 sec. 22. That legislation, codified beginning at § 40000 of the California Public Resources Code, requires local agencies, "as subdivisions of the state, to make adequate provision for solid waste handling, both within their respective jurisdictions and in response to regional needs...." Public Resources Code § 40002. The statute delegates relevant aspects of solid waste handling to "each county, city, district or other local governmental agency." Public Resources Code § 40059.

In 1966, the annexation of Travis by Fairfield was authorized and accomplished. By reason of that annexation, Travis was included within the limits of the city of Fairfield. Congress has mandated that federal agencies be subject to "local regulation." In the absence of evidence to the contrary, this court must assume that Congress intended the phrase "local regulation" to have its ordinary meaning. Ordinarily, a local governmental unit has the authority to regulate activity within its geographical limits. It is proper to assume that Congress intended the phrase "local regulation" to have this ordinary meaning.

Interpreting the regulation as the government suggests in this case would have the practical effect of exempting Travis from Fairfield's regulations respecting solid waste collection, even though Travis is entirely within Fairfield's boundaries.[9] As discussed above, no exemptions beyond those described in the statute are permitted. The government's interpretation also would have the effect of multiplying rather than unifying the number of jurisdictions

---

**8.** The state plan is a state solid waste management plan. 42 U.S.C. § 6942.

**9.** The government argues that the statute does not address the question of what level of local regulation a federal facility is subject to if the federal facility lies in two or more municipalities or is otherwise potentially subject to regulation by two locales. That conflict is not presented by this case, since Travis is entirely within the city of Fairfield.

with separate waste collection systems and would conflict with the Congressional concern for unification of such systems.[10] The exemption of Travis Air Force Base from a local regulation to which it would otherwise be subject under the statute is beyond the authority of the EPA Administrator under RCRA. Accordingly, plaintiff's motion for reconsideration should be granted.

For the same reasons, plaintiff's motion for summary judgment should be granted. Since 40 C.F.R. § 255.33 cannot apply to exempt Travis from Fairfield's regulations, 42 U.S.C. § 6961 requires Travis' compliance with those regulations and plaintiff is entitled to summary judgment.

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT:

1. Plaintiff's motion for reconsideration be GRANTED;

2. Plaintiff's motion for summary judgment be GRANTED; and

3. The district court enter an order (a) declaring the October 1988 solicitation illegal under RCRA; (b) permanently enjoining the defendants, their successors and all of their employees, officers, attorneys and agents from further performance under the contract awarded pursuant to the November 1988 solicitation; and (c) permanently enjoining the defendants from failing to comply with 42 U.S.C. § 6961 and with the local requirements for refuse collection promulgated by the city of Fairfield.[11]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.

Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Greenhow v. Secretary of Health and Human Services*, 863 F.2d 633 (9th Cir.1988).

---

**10.** The government argues that exclusive franchise agreements also create problems for comprehensive solid waste management, and directs the court's attention to Solano County's Draft Solid Waste Management Plan Revision of March 1988. That may be the case, but the Ninth Circuit has already held that exclusive franchise agreements are "local requirements" within the meaning of RCRA and that issue cannot be relitigated in this proceeding.

**11.** This court cannot recommend that the district court require defendants to enter into a contract with plaintiff for refuse collection, as such an order would apparently constitute an order for specific performance. *See Price v. U.S. General Services Administration*, 894 F.2d 323, 325 n. 5 (9th Cir.1990); but *cf.* 5 U.S.C. § 706(1) (district court "shall compel agency action unlawfully withheld").